742 So.2d 362 (1999)
Michael MILBURN, Appellant,
v.
STATE of Florida, Appellee.
No. 96-05271.
District Court of Appeal of Florida, Second District.
August 18, 1999.
*363 Robert A. Norgard, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Tampa, for Appellee.
BLUE, Judge.
In this appeal, Michael Milburn argues that the trial court erred in denying a mistrial based on two prosecutorial errors, the State's improper bolstering of its expert witness and its erroneous closing argument regarding the insanity defense. We reverse Milburn's conviction for first-degree murder. Because insanity was not raised as a defense to the second count charging attempted first-degree murder, Milburn's conviction for attempted first-degree murder is affirmed.
This case resulted from the stabbing death of Anna Carter and an attack upon her daughter, Tina Carter. Milburn claimed insanity as a defense to Anna Carter's murder. At trial, the defense called Dr. Barbara Stein, a board-certified psychiatrist with a subspecialty in forensic psychiatry. In her testimony, Dr. Stein opined that Milburn suffered from a disassociative disorder, in addition to other problems, and concluded, within a reasonable degree of medical certainty, that Milburn was insane during the attack on Anna Carter. In rebuttal, the State called Dr. Sidney Merin, a clinical psychologist. In his medical opinion, Milburn was sane at the time of the crimes.
On redirect, the prosecutor asked Dr. Merin, "After you were contacted by my office on May 14th, 1993, how long was it before [defense counsel] tried to hire you?" Defense counsel immediately objected and moved for a mistrial, arguing that the question constituted improper bolstering of the State's expert witness. The trial court agreed and rebuked the prosecutor for what it characterized as "a cheap shot." The motion for mistrial was taken under advisement and subsequently denied. In rebuttal closing argument, the same prosecutor made a closing argument that completely misstated the law regarding the shifting burdens of proof that are applicable when a defendant raises the defense of insanity.
We first address Milburn's point on appeal regarding the closing argument. The prosecutor argued that the defense expert had failed to prove beyond a reasonable doubt that Milburn was insane. When the trial court sustained an objection to this argument, the prosecutor apologized but then argued that the defense had failed to sustain its burden of showing insanity by a preponderance of the evidence. The defense again objected and moved for a mistrial. The trial court sustained the objection, but denied the mistrial.
The argument by the State was clearly erroneous. When a defendant invokes the defense of insanity, the defendant's burden is to produce evidence which raises a reasonable doubt that the defendant was insane at the time of the criminal act. The State then carries the burden of *364 proving beyond a reasonable doubt that the defendant was sane at the time of the crime. Here, the State argues that the comments were proper because the jury is allowed to determine whether the defense has provided sufficient evidence to shift the burden to the State. While the jury does make that determination, the State is incorrect in supporting an argument that the burden does not shift unless the defense has shown insanity by a preponderance of the evidence. The presumption of sanity vanishes when the defense has presented any competent evidence of insanity. See Yohn v. State, 476 So.2d 123 (Fla.1985) (holding that standard jury instruction on insanity was inaccurate because it "confuses the burden of presenting some competent evidence as to insanity, commonly referred to as the burden of going forward with evidence, with the ultimate burden of proof") (quoting Reese v. State, 452 So.2d 1079, 1081 (Fla. 4th DCA 1984) (Anstead, J., concurring in part and dissenting in part), quashed, 476 So.2d 129 (Fla.1985)). Without quantifying the defense burden, it is far less than the preponderance of the evidence argued to the jury. We cannot say that the error was harmless because, as to count one, the jury's sole decision rested on whether it accepted or rejected the insanity defense. See Nowitzke v. State, 572 So.2d 1346 (Fla.1990) (reversing conviction based on prosecutorial errors that misled the jury and discredited insanity defense).
Milburn also argues that the trial court erred in failing to declare a mistrial after the prosecutor informed the jury that the defense had tried to hire the State's expert witness. Generally, "the fact that the expert was originally retained by the adverse party is inadmissible to bolster the credibility of the expert." Charles W. Ehrhardt, Florida Evidence § 702.5 (1998) (footnote omitted). In Sun Charm Ranch, Inc. v. City of Orlando, 407 So.2d 938 (Fla. 5th DCA 1981), an eminent domain case, the Fifth District held that property owners could call the government's appraiser as their expert but could not show on direct exam that the expert had been first hired by the government. The opinion reviewed other jurisdictions that either allowed or prohibited this type of question, and provided the following analysis of the issue:
The relevancy of this evidence is the inference that the party who fails to call an expert is covering up harmful evidence or concealing bad facts. But there are many other reasons why an expert consulted prior to trial may not be called: inadequate background and qualifications; ability to testify in court not as good as another available expert's; scheduling problems; fees too high; testimony cumulative to another expert's. Further, expert opinion is not "fact." It is supposed to help the factfinder discern the truth of the matter in controversy. Such opinions often vary and at trial, the experts may absolutely contradict one another. So long as it is legitimate and honest, each party should be free to seek out and produce at trial the expert testimony most favorable to his case. We question the fairness of a rule that would require a party to explain and apologize to the jury for not having called an expert witness to testify.
407 So.2d at 940 (agreeing with a Texas court's assessment of prejudice because, when this evidence is allowed, jury verdicts tend to come in very close to the appraisal amount suggested by the "rejected" expert's testimony). The Eleventh Circuit is in agreement with the Fifth District's holding:
[A] party should not generally be permitted to establish that the witness had been previously retained by the opposing party. While there may be situations where this fact should be disclosed to a jury, we believe that the unfair prejudice resulting from disclosing this fact usually outweighs any probative value. *365 Peterson v. Willie, 81 F.3d 1033, 1038 (11th Cir.1996) (noting that this prejudicial fact has been described as "explosive" but finding error harmless in Peterson's civil rights action) (footnote omitted). We find persuasive the reasoning of these decisions and conclude that the question at issue here was error.
The Fourth District, however, has reached a contrary holding. In Broward County v. Cento, 611 So.2d 1339 (Fla. 4th DCA 1993), the court found no error in a personal injury plaintiff calling the County's medical expert as a trial witness and referring to the fact that the doctor had been originally hired by the County. The court distinguished Sun Charm because it involved a witness who had been hired only as a consulting expert, not as an expert witness for trial. See 611 So.2d at 1340. See also Williams v. State, 397 So.2d 1049 (Fla. 4th DCA 1981) (finding no error in State showing that fingerprint expert had been first hired by the defense). For a further discussion of this issue, see Lori J. Henkel, Compelling testimony of opponent's expert in state court § 17, 66 A.L.R.4th 213, 241 (1988). Because we reverse this case due to the confusing argument about the burden of proof on the issue of insanity, we need not decide whether this error, standing alone, would have required a mistrial and, thus, we decline to express direct conflict with Sun Charm.
Reversed and remanded for new trial as to count one; count two affirmed.
ALTENBERND, A.C.J., and STODDARD, RALPH C., Associate Judge, Concur.